# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 22, 2018          Decided June 29, 2018

No. 15-3074

UNITED STATES OF AMERICA,
APPELLEE

v.

GREGORY JOEL SITZMANN,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cr-00242-1)

*Paul L. Knight*, appointed by the court, argued the cause and filed the briefs for appellant.

*Daniel J. Lenerz*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *Elizabeth Trosman*, *John P. Mannarino*, and *George P. Eliopoulos*, Assistant U.S. Attorneys.

Before: GRIFFITH and KATSAS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed PER CURIAM.

Concurring opinion filed by *Circuit Judge* KATSAS.

Opinion dissenting from the disposition in Part II.F filed by *Senior Circuit Judge* EDWARDS.

PER CURIAM: On May 21, 2012, following a 23-day trial, a jury found appellant Gregory Sitzmann guilty of one count of conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and § 846 (2012). The Government presented evidence at trial that, from approximately 1990 to 2004, Sitzmann participated in a conspiracy to traffic large quantities of cocaine from Mexico and Colombia to the United States, Canada, Europe, and elsewhere.

Following his conviction, Sitzmann filed a motion for judgment of acquittal or, in the alternative, a new trial, challenging his conviction on the grounds that venue was improper and that the Government had impermissibly introduced and relied on testimony regarding the guilty plea of one of Sitzmann's co-conspirators. Sitzmann filed a separate motion contending that the Government violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose materially exculpatory evidence to the defense, and also presented false evidence at trial in violation of *Napue v. Illinois*, 360 U.S. 264 (1959). The District Court denied these motions.

On appeal, Sitzmann contends that the District Court erred in rejecting his claim that the Government "manufactured venue" in this case and erroneously concluded that venue was proper in the District of Columbia ("District" or "D.C."). He also asserts that the District Court erred in denying his *Brady* and *Napue* claims and his assertion that the Government impermissibly introduced and relied on evidence of his co-

conspirator's guilty plea at trial. He further contends that the District Court was mistaken when it rejected his pre-trial motion urging that the court lacked jurisdiction over alleged criminal wrongdoing involving extraterritorial drug activity. And he argues that his trial attorney provided ineffective assistance of counsel.

We find no merit in Sitzmann's challenges to the aforementioned rulings of the District Court. We therefore affirm his conviction.

## I.   BACKGROUND

On August 7, 2008, a federal grand jury indicted Sitzmann on the drug conspiracy charges at issue in this case. Sitzmann was the only defendant charged in the indictment under which he stood trial. At trial, however, the Government alleged that, from approximately 1990 to 2004, Sitzmann participated in the charged conspiracy with several other individuals, including John Sager, Jerry Harvey, Gary Paulson, and George Jones.

The evidence against Sitzmann consisted of recorded conversations and testimony from Sitzmann's alleged co-conspirators and others, Sitzmann's own statements, physical and documentary evidence, and expert testimony. The evidence showed that the conspiracy began in the early 1990s when Sitzmann was incarcerated in a Florida prison for unrelated cocaine charges and became acquainted with fellow inmates Sager, Harvey, and Paulson. While incarcerated, Sitzmann, Sager, and Harvey had conversations about using airplanes to smuggle drugs. Sitzmann and Paulson also discussed smuggling cocaine into Canada following their release from prison; Sitzmann told Paulson he had a cocaine supplier in Mexico, and Paulson agreed to connect Sitzmann to

individuals in Canada to whom Sitzmann could supply cocaine in the future.

Following Sitzmann's release from prison in the mid-1990s, he engaged in several overt acts in furtherance of the drug conspiracy. For example, he discussed with his co-conspirators plans to launder money and fly planes to traffic cocaine from South America to Europe. Sitzmann, Jones, and other co-conspirators transported cocaine from Mexico to Canada using SUVs with modified gas tanks. And in February 2004, Sitzmann was arrested in France after French authorities found seven kilograms of cocaine hidden in his rental car. Sitzmann remained incarcerated for that offense in France for several years. During a voluntary conversation with federal authorities in 2008, Sitzmann admitted that, between December 2003 and February 2004, he passed through the United States on at least one occasion when he was smuggling 14 to 16 kilograms of cocaine from Colombia to Europe.

Sitzmann and his co-conspirators engaged in other drug activities in the United States during the course of the ongoing conspiracy. For example, Sitzmann admitted to authorities that, in the mid-1990s, he and Jones went to Chicago to acquire several kilograms of cocaine. In the early 2000s, Sitzmann and another individual named Terrence Colligan "shined up" 16 kilograms of cocaine in Jones' home in Florida. Trial Tr. (4/30/12) at 59–62. And in 2002, Colligan "cut" two kilograms of cocaine for Sitzmann in the same home while Jones and Sitzmann were both present. Gov't Ex. 1025, *reprinted in* Supplemental Appendix ("S.A.") 719. Unbeknownst to Sitzmann and Jones, Colligan had been working as a Government informant since 2000.

Former D.C. police officer William Buss participated in the Government's investigation of Sitzmann. At Sitzmann's trial,

Buss testified that during the course of his investigation he learned that Jones attempted to acquire 20 kilograms of cocaine from Sitzmann between approximately September or October 2003 and January 2004. When Sitzmann failed to supply the cocaine, Jones turned to Colligan to see if he could provide it. After Colligan reported Jones' request to law enforcement officers, the officers organized a controlled delivery of cocaine to Jones in order to facilitate the arrest of Jones. As part of this plan, Colligan offered to supply Jones with 20 kilograms of cocaine.

On March 11, 2004, Jones and Colligan met in Florida to discuss the deal. Jones assured Colligan that he had buyers for the cocaine, but the deal fell through when it became clear that Jones did not have the money to purchase the drugs. Colligan then returned to D.C. When Jones called Colligan several days later, Colligan – at the Government's urging – offered to return to Florida to supply 16 kilograms of cocaine, but told Jones he needed $1,000 to cover the costs of transporting the cocaine from Washington, D.C. to Florida (where Jones was at the time). The next day, Jones caused $1,000 to be wired from Florida to D.C.

Agents arrested Jones in Florida on March 26, 2004, right after Colligan delivered him the 16 kilograms of cocaine. During a search of Jones' home, agents found several items belonging to Sitzmann, including bags with secret compartments, documents, and supplies for storing drugs. Jones was charged with conspiracy to possess and distribute cocaine as well as conspiracy to commit money laundering. He pled guilty and agreed to cooperate with the Government in the case against Sitzmann. Jones provided grand jury testimony, but passed away before Sitzmann's trial. However, during Sitzmann's trial, Buss testified that Jones had pled guilty to cocaine conspiracy charges and cooperated with the

Government before his death. Defense counsel neither objected to this testimony nor requested a jury instruction precluding the jury from using Jones' guilty plea as substantive evidence against Sitzmann.

The wire transfer from Jones (in Florida) to Colligan (in D.C.) became a point of contention between the parties before and during trial. The District Court concluded that the wire transfer established venue in D.C. for Sitzmann's conspiracy charge. Prior to trial, Sitzmann filed a motion to dismiss the case, alleging that the Government had impermissibly "manufactured venue" by orchestrating the wire transfer solely for the purpose of creating venue in D.C. *See United States v. Sitzmann* (*Sitzmann IV*), 74 F. Supp. 3d 96, 113–14 (D.D.C. 2014). Sitzmann also filed a motion to transfer venue to Florida. *Id.* The District Court denied both motions. The District Court judge doubted whether "venue manipulation" or "venue entrapment" were viable theories in this circuit and explained that, even if such concepts existed, the overt acts in this conspiracy were "committed in many, many different places" so there was "nothing unfair" about having the criminal prosecution of Sitzmann in the District of Columbia. Tr. of Motions Hearing (9/8/11) at 41.

The topic of venue arose again at trial. Buss testified that the purpose of having Colligan ask Jones to wire funds to D.C. was to "see some good faith from Jones" and to "g[i]ve us venue to make the arrest [of Jones] in Washington, D.C." Trial Tr. (4/30/12) at 80, 87. Following Buss' testimony – and at the urging of the prosecution, with the consent of Sitzmann's counsel – the trial judge gave a mid-trial jury instruction stating that "[v]enue is a legal question about where a case may be filed and tried. I have already decided that venue is proper in this Court. It is not a question for the jury to decide." *Id.* at 123. After both sides had rested, however, defense counsel argued

for the first time that the question of venue should be submitted to the jury. Defense counsel requested that the jury be instructed that: "If you find that there was a conspiracy, but it was not in or did not involve the District of Columbia, then you must acquit the defendant, notwithstanding any other issues in the case." Notice of Filing (Tab J), *reprinted in* S.A. 174. The District Court denied the requested instruction. *See Sitzmann IV*, 74 F. Supp. 3d at 115.

The jury returned a guilty verdict on May 21, 2012. Sitzmann then filed a motion for judgment of acquittal or, in the alternative, a new trial, alleging, *inter alia*, that the District Court erred as a matter of law in rejecting his "manufactured venue" claim and finding venue proper in the District of Columbia. Sitzmann also contended that the Government had improperly used Jones' guilty plea as substantive evidence against him at trial. In a separate post-trial motion, Sitzmann argued that the prosecution violated its obligations under *Brady*, 373 U.S. 83, and *Giglio v. United States*, 405 U.S. 150 (1972), by failing to produce Jones' and Colligan's grand jury testimony, and also that the prosecution presented false evidence at trial in violation of *Napue*, 360 U.S. 264. The District Court denied both motions. *See Sitzmann IV*, 74 F. Supp. 3d at 102–07, 111–17, 127–28; *United States v. Sitzmann* (*Sitzmann V*), 74 F. Supp. 3d 128, 133–38, 139 & n.7, 140 (D.D.C. 2014).

The District Court thereafter sentenced Sitzmann to 348 months of imprisonment followed by 120 months of supervised release and imposed a $500,000 fine. Sitzmann's timely appeal followed.

## II.   ANALYSIS

### A.  Standard of Review

We review the District Court's legal determinations *de novo*. *United States v. Dunn*, 631 F.3d 1291, 1292 (D.C. Cir. 2011). In addition, we review the District Court's denial of a motion for judgment of acquittal *de novo*. *United States v. Kayode*, 254 F.3d 204, 212 (D.C. Cir. 2001). In assessing whether the District Court erred in denying a motion for judgment of acquittal, we, like the District Court, determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). By contrast, "[w]e review a [D]istrict [C]ourt's ruling on a motion for a new trial for abuse of discretion." *United States v. Johnson*, 519 F.3d 478, 487 (D.C. Cir. 2008). Finally, we review *de novo* claims that the government violated its obligations under *Brady* to disclose evidence favorable to the accused, *see id.* at 488, as well as claims under *Napue* that the government presented false evidence at trial, *see United States v. Mejia*, 597 F.3d 1329, 1338 (D.C. Cir. 2010).

### B.  Extraterritorial Application of Criminal Statutes

Sitzmann first contends that the District Court "lacked jurisdiction" over evidence introduced at trial that he smuggled drugs into Europe between 2001 and 2004, including his 2004 arrest in France for illegal importation of narcotics. Appellant's Br. 29. He thus argues that the trial judge erred in permitting the Government to present evidence of his extraterritorial drug activities at trial. Sitzmann claims this was an error because the

sole object of those foreign drug activities was to possess and distribute controlled substances outside of the United States. He further argues that there is no indication that 21 U.S.C. § 841(a)(1) and § 846, the statutes under which he was convicted, apply to conduct that occurred on foreign soil.

"It is a longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991) (quoting *Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 285 (1949)). In *Morrison v. National Australia Bank Ltd.*, the Supreme Court established a two-step framework for determining issues involving the extraterritorial application of statutes. 561 U.S. 247, 255, 261–73 (2010). The Court recently described the two-step inquiry as follows:

> At the first step, we ask whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially. . . . If the statute is not extraterritorial, then at the second step we determine whether the case involves a domestic application of the statute, and we do this by looking to the statute's 'focus.' If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory.

*RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2101 (2016).

Against this backdrop, we first consider whether 21 U.S.C. § 841(a)(1) and § 846 may apply to conduct that occurred outside of the United States. Read together, § 841(a)(1) and § 846 make it unlawful for "any person" to conspire to distribute or possess with the intent to distribute a controlled substance, such as cocaine. Neither § 841(a)(1) nor § 846 provides a "clear indication" of applying extraterritorially. *Morrison*, 561 U.S. at 265. The presumption against extraterritoriality therefore applies.

Our analysis, however, does not end there. At the second step, we find that "the conduct relevant to the statute[s'] focus occurred in the United States." *RJR Nabisco*, 136 S. Ct. at 2101. The evidence showed that Sitzmann entered the conspiratorial agreement in the United States, smuggled cocaine into and out of the United States, and engaged in other activity in the United States in furtherance of the conspiracy. Therefore, this "case involves a permissible domestic application" of § 841(a)(1) and § 846 "even if other conduct occurred abroad." *Id.* Accordingly, we reject Sitzmann's claim.

## C. Claims Regarding Venue

Sitzmann next contends that the District Court erred in dismissing his "manufactured venue" claim, instructing the jury mid-trial that venue in the District of Columbia was proper as a matter of law, and rejecting his later request that the jury be instructed to determine whether any part of the charged conspiracy occurred in D.C. We find no merit in these claims.

### 1. "Manufactured Venue"

We begin with Sitzmann's contention, which he raised in his motion for judgment of acquittal, that the Government

improperly "manufactured venue" in this case by luring Jones into wiring funds from Florida to D.C. to establish venue. Sitzmann also claims that the Government violated his due process rights by orchestrating this wire transfer.

Several circuits "have rejected the concept of manufactured venue or 'venue entrapment.'" *United States v. Valenzuela*, 849 F.3d 477, 488 (1st Cir. 2017); *see also, e.g.*, *United States v. Rodriguez-Rodriguez*, 453 F.3d 458, 462 (7th Cir. 2006) ("The entrapment doctrine protects the defendant against manufactured offenses (unless the defendant is predisposed); it does not limit venue."); *United States v. Al-Talib*, 55 F.3d 923, 929 (4th Cir. 1995) ("There is no such thing as 'manufactured venue' or 'venue entrapment.'"). Other circuits, including our own, have reserved ruling on the question of whether "manufactured venue" is a viable theory, but have suggested that such a theory may only apply in "cases involving 'extreme' law enforcement tactics." *United States v. Chi Tong Kuok*, 671 F.3d 931, 938 (9th Cir. 2012); *see also United States v. Spriggs*, 102 F.3d 1245, 1250–51 (D.C. Cir. 1996) (per curiam) (as amended Feb. 20, 1997); *United States v. Myers*, 692 F.2d 823, 847 n.21 (2d Cir. 1982).

In *Spriggs*, the appellants argued that their convictions must be set aside because government agents "manufactured venue" in the District of Columbia by, for example, "'purposefully' arrang[ing] for defendants to pick-up cash" in D.C. 102 F.3d at 1250. In assessing this claim, we stated that "[i]t is unclear exactly what a claim of 'manufactured venue' entails" and doubted "whether there is such a thing as 'venue entrapment.'" *Id*. We stated further that "[i]t is a little hard to conceive of a person predisposed to commit a federal crime – but not in some specific district." *Id.* But we declined to resolve the question of whether the concept of "manufactured venue" exists, finding that there was "no suggestion [in the record] that

appellants had even the slightest tendency to balk at the [District of Columbia's] edge, much less the necessary lack of predisposition" to commit a federal crime in Washington, D.C. *Id.* at 1250–51. The decision "assume[d] without deciding that there would be a fatal impropriety where 'the key events occur in one district, but the prosecution, preferring trial elsewhere, lures a defendant to a distant district for some minor event simply to establish venue.'" *Id*. at 1251 (citation omitted). On the record before it, however, the court in *Spriggs* found nothing "reprehensible" about an agent's decision to pose as a drug dealer from Washington, D.C. *Id.*

Sitzmann asks this court to decide the issue left unresolved in *Spriggs*: whether the Government can "manufacture venue" through entrapment. Appellant's Br. 34. We decline to do so. We remain unconvinced that "manufactured venue" or "venue entrapment" are viable theories. We need not reach the issue, however, because Sitzmann has failed to point to any circumstances in this case that might be viewed as "venue entrapment," as conceptualized by the court in *Spriggs*.

Viewing the evidence in the light most favorable to the prosecution, *Jackson*, 443 U.S. at 319, there is "no suggestion [in the record] that [Jones] had even the slightest tendency to balk at the District's edge." *Spriggs*, 102 F.3d at 1250–51. When Colligan told Jones that Colligan needed to go to D.C. to obtain cocaine for Jones, Jones replied, "the sooner the better." Tr. of Recordings (3/6/04). And when Colligan asked Jones to wire $1,000 to D.C. to cover the costs of transporting the cocaine from Washington, D.C. to Florida, Jones caused the funds to be wired the next day.

We also reject Sitzmann's contention that the Government's role in facilitating the wire transfer was the kind of "reprehensible" conduct *Spriggs* suggested might violate

due process. *See Spriggs*, 102 F.3d at 1251. We agree with the District Court that there is nothing inherently reprehensible about a law enforcement officer's decision to have a government cooperator, Colligan, ask a target, Jones, to wire funds to Washington, D.C. in connection with a cocaine transaction in which the target was a willing participant. The overt acts in the charged conspiracy occurred in many places, so there was nothing unfair about having the case tried in the District of Columbia.

### 2. Jury Instruction

We next consider Sitzmann's contention that the District Court erred in instructing the jury that venue is a legal question for the court to resolve and that, as a legal matter, venue was proper in Washington, D.C. In Sitzmann's view, venue was a question of fact for the jury to resolve. We disagree.

Venue is a jury question if "(1) the defendant objects to venue prior to or at the close of the prosecution's case-in-chief, (2) there is a genuine issue of material fact with regard to proper venue, and (3) the defendant timely requests a jury instruction." *United States v. Haire*, 371 F.3d 833, 840 (D.C. Cir. 2004) (quoting *United States v. Perez*, 280 F.3d 318, 327 (3d Cir. 2002)), *vacated on other grounds*, 543 U.S. 1109 (2005); *see also United States v. Nwoye*, 663 F.3d 460, 466 (D.C. Cir. 2011). In denying Sitzmann's motion for a new trial, the District Court concluded that venue was not a factual question for the jury under the test set forth in *Haire*. *See Sitzmann IV*, 74 F. Supp. 3d at 111–17. Although we ordinarily review a District Court's denial of a motion for new trial for abuse of discretion, *Johnson*, 519 F.3d at 487, "[a]n alleged failure to submit a proper jury instruction is a question of law" that we review *de novo*, *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 556 (D.C. Cir. 1993).

The parties do not dispute that Sitzmann satisfied the third requirement of the *Haire* test by timely requesting a jury instruction. *See Sitzmann IV*, 74 F. Supp. 3d at 111 & n.6. The principal disagreement between the parties is whether the first and second requirements of the *Haire* test were met. Sitzmann argues that his trial counsel satisfied the first requirement by asking during the cross-examination of then-retired officer Buss questions that "focus[ed] on venue-related issues which had been previously developed during a pretrial motions hearing" and also by presenting a defense at trial that Sitzmann "had nothing to do with the purported drug deal between Jones and Colligan and that there was no venue for that reason." Appellant's Br. 38, 41. Sitzmann maintains that he satisfied the second requirement by raising at trial the question of whether the Jones-to-Colligan, Florida-to-D.C. wire transfer was an act in furtherance of the charged conspiracy. *Id.* at 41. We find these arguments unavailing.

"A defendant may object to venue by raising its absence in a pre-trial motion, challenging during the Government's case its evidence as to venue, or making a motion for acquittal at the close of the Government's case that specifically deals with" whether venue in the District Court was proper. *Perez*, 280 F.3d at 334–35. In his briefing to this court, Sitzmann does not contend that his pre-trial motions raised the question of whether venue was proper in the District of Columbia. In addition, far from challenging the Government's evidence regarding venue at trial, Sitzmann's counsel consented to the Government's request that the trial judge instruct the jury that venue was a legal matter and that the court had determined that venue was appropriate in the District of Columbia. *See Sitzmann IV*, 74 F. Supp. 3d at 115. After the judge delivered the instruction, "[t]he topic of venue was not raised again during" the Government's case-in-chief. *Id*.

It was only on the day of closing arguments, after both sides had rested, that Sitzmann raised for the first time the argument that the jury had to decide whether venue was proper in the District of Columbia because there was a question of fact as to whether Sitzmann was still part of the conspiracy when Jones wired the funds to D.C. *See id.* at 115 & n.9. The District Court denied this request pursuant to the *Haire* test. *Id.* at 115.

On the record before us, we find no basis to overturn the District Court's determination that Sitzmann failed to "object to venue during trial, either explicitly or by 'challenging during the Government's case its evidence as to venue.'" *Id.* at 117 (quoting *Perez*, 280 F.3d at 334). We agree with the District Court that Sitzmann's counsel did not place the propriety of venue in issue during his cross-examination of Buss or at any other time during trial. Sitzmann's contention, on the day of closing arguments, that venue was a jury question because there was a factual question as to whether he played a role in the Jones-Colligan transaction, came too late. *See Perez*, 280 F.3d at 335 ("Objecting to venue at the jury instruction phase, without more, is not sufficient, for it does not flag and establish an issue of fact that warrants a special jury instruction."). Because Sitzmann did not "object[] to venue prior to or at the close of the prosecution's case-in-chief," *Haire*, 371 F.3d at 840, Sitzmann failed to satisfy the first requirement of the *Haire* test. We therefore conclude that the District Court did not err in determining that venue was not a question for the jury to decide.

### 3. Challenge to Propriety of Venue

We need not linger on Sitzmann's final contention that venue was not proper in D.C. *See* Appellant's Br. 32–34 (arguing that Sitzmann was not a part of the conspiracy when

the funds were wired to D.C.). As explained above, Sitzmann forfeited this argument by failing to put it in issue at trial before the close of evidence and by expressly consenting to a mid-trial jury instruction informing the jury that venue was proper as a matter of law. *See Nwoye*, 663 F.3d at 465–66. Our review of this unpreserved claim is therefore for plain error. *United States v. Pole*, 741 F.3d 120, 124 (D.C. Cir. 2013).

On appeal, Sitzmann does not point to any evidence that "demonstrates an affirmative effort to withdraw from the conspiracy." *United States v. Thomas*, 114 F.3d 228, 267 (D.C. Cir. 1997); *see also United States v. Bostick*, 791 F.3d 127, 143 (D.C. Cir. 2015) ("To withdraw from a conspiracy, an individual must come clean to the authorities or communicate his or her abandonment 'in a manner reasonably calculated to reach co-conspirators.'" (citation omitted)). Moreover, Sitzmann's contention that his arrest in France withdrew him from the conspiracy fails because an arrest, without more, does not indicate withdrawal. *See, e.g.*, *United States v. Massino*, 546 F.3d 123, 137 (2d Cir. 2008) ("[A] conspirator who has been arrested remains responsible for acts committed in furtherance of the conspiracy by co-conspirators who are still at large."). Therefore, the District Court did not err – let alone *plainly* err – in concluding that Sitzmann was still a part of the conspiracy with Jones at the time of the wire transfer, that the wire transfer was an overt act in furtherance of the conspiracy, and that the overt act established venue. *See Sitzmann IV*, 74 F. Supp. 3d at 105–07; *see also United States v. Watson*, 717 F.3d 196, 198 (D.C. Cir. 2013) ("[V]enue is proper in any jurisdiction where any co-conspirator committed an overt act in furtherance of the conspiracy.").

**D. *Brady* and *Napue* Claims**

Sitzmann next contends that he was denied due process of law because the Government failed to timely disclose exculpatory and impeachment evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), and because the Government knowingly presented false evidence at trial in violation of *Napue v. Illinois*, 360 U.S. 264 (1959). We find no merit in these claims.

**1. Alleged *Brady* Violation**

Sitzmann first argues that the Government's failure to turn over the grand jury testimony of his co-conspirator, George Jones, violated *Brady*. Sitzmann raised this claim in a post-trial motion to compel the prosecution to produce Jones' and Colligan's grand jury testimony, which the District Court denied. *See Sitzmann V*, 74 F. Supp. 3d at 131–33. Although the Government subsequently produced Jones' grand jury testimony for sentencing purposes, Sitzmann contends that this testimony should have been disclosed prior to trial.

"The Constitution's 'fair trial guarantee' requires the prosecution to timely turn over any information in the government's possession that is materially favorable to a criminal defendant . . . ." *United States v. Straker*, 800 F.3d 570, 602 (D.C. Cir. 2015) (per curiam) (quoting *United States v. Ruiz*, 536 U.S. 622, 628 (2002)); *see also Brady*, 373 U.S. at 87. In *Giglio*, the Supreme Court held that "evidence that could be used to impeach government witnesses" falls within the *Brady* rule. *United States v. McGill*, 815 F.3d 846, 922 (D.C. Cir. 2016) (per curiam); *see also Giglio*, 405 U.S. at 153–54.

There are three components of a *Brady* claim. First, "[t]he evidence at issue must be favorable to the accused, either

because it is exculpatory, or because it is impeaching." *Strickler v. Greene,* 527 U.S. 263, 281–82 (1999). Second, the "evidence must have been suppressed by the [government], either willfully or inadvertently." *Id.* at 282. And third, "prejudice must have ensued." *Id.* To satisfy the prejudice component, the defendant must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Sitzmann's *Brady* claim concerns evidence introduced at trial that Jones attempted to acquire multi-kilograms of cocaine from Sitzmann. At trial, then-retired officer Buss testified that he had learned during his investigation that "Jones was interested in buying 20 kilograms of cocaine." Trial Tr. (4/30/12) at 9. According to Buss, Jones initially attempted to acquire the 20 kilograms from Sitzmann sometime between September or October 2003 and January 2004, but when Sitzmann failed to supply the drugs, Jones turned to Colligan for the cocaine. *Id.* at 9–10. Buss testified that Jones intended to supply this cocaine to individuals with whom Sitzmann was "involved" – who were "[m]ore of Mr. Sitzmann's people" than Jones' people – and that Jones expected to make "$1,500 for each kilogram sold[;] he was going to split it with Mr. Sitzmann, $750 a piece." *Id.* at 11.

Sitzmann contends that Jones' grand jury testimony was both exculpatory – in that it "supported Sitzmann's position that he never promised Jones that he would provide [him] cocaine in late 2003 or 2004" – and also impeaching – in that it would have contradicted Buss' testimony that Sitzmann promised to supply 20 kilograms of cocaine to Jones sometime in late 2003 or early 2004. *See* Appellant's Br. 43–45, 49. Sitzmann maintains that "Jones never mentioned in his sworn testimony anything with regard to Sitzmann promising to

supply him with 20 kilograms of cocaine prior to January, 2004, or anytime," and that "Jones first approached Colligan for cocaine, not Sitzmann." *Id.* at 43–45.

Sitzmann's *Brady* claim fails because Jones' grand jury testimony is neither exculpatory nor inconsistent with Buss' recounting of the facts. As part of his grand jury testimony, Jones adopted a statement of facts in support of his May 2004 guilty plea. *See* Tr. of Grand Jury Proceedings (6/29/05) at 47–50. In that statement of facts, Jones admitted the following:

> In early January, 2004, Colligan reported that a criminal associate named Sitzman[n] promised to supply multi-kilogram quantities of cocaine to George Jones. Thereafter, in January 2004, Jones telephoned Colligan to complain that Sitzman[n] had not delivered the cocaine as promised and George Jones asked Colligan to supply him with 20 kilo[grams] of cocaine or in the alternative, provide him with another source of cocaine. . . . Shortly thereafter, Jones learned of Sitzman[n]'s arrest [and] detention in France, and confirmed to Colligan that Sitzman[n] definitely was unable to deliver cocaine.

Agreed Statement of Facts in Support of Guilty Plea at 1–2 (May 12, 2004), *reprinted in* Appellant's Appendix ("App.") 479–80.

Sitzmann acknowledges that Jones adopted the statement of facts during his grand jury testimony, but notes that the statement of facts contains "no discussion as to when or where Sitzmann allegedly made this promise and no discussion of any amounts that were to be delivered." Appellant's Br. 43 n.22. True enough, but this does not render Jones' grand jury testimony inconsistent with the more specific trial testimony

Buss provided based on the information he had learned during his investigation. *See* Appellee's Br. 40.

Sitzmann also argues that Jones' grand jury testimony was impeaching because it would have discredited Buss' testimony that Jones was going to split his profits from the sale of the cocaine with Sitzmann "50-50." Appellant's Br. 53 (alleging that Jones' testimony would have shown that Jones "only intended to give a small percentage of his hoped-for profit to Sitzmann"). Sitzmann's argument is unavailing because Buss' testimony on this point simply repeated what Jones had said to Colligan in a recorded statement: that Jones intended to make "fifteen hundred" on each kilogram sold, "750 to Greg [Sitzmann] and 750 for me." Tr. of Recordings (3/11/04). Because Buss' testimony merely reiterated this other trial evidence, there is no "'reasonable probability' that the result of the trial would have been different" had Jones' grand jury testimony been disclosed. *United States v. Borda*, 848 F.3d 1044, 1066 (D.C. Cir. 2017). Sitzmann has therefore failed to establish a *Brady* violation.

In short, Sitzmann has not shown that Jones' testimony was "favorable to the accused" within the meaning of *Brady* and *Giglio*. *Strickler,* 527 U.S. at 281–82. Accordingly, the District Court did not err in rejecting Sitzmann's claims.

### 2. Alleged *Napue* Violation

Sitzmann next contends that the Government presented false evidence at trial, in violation of *Napue*. Specifically, he takes issue with Buss' testimony that Jones intended to supply cocaine to "[c]o-conspirators in [this case]" who had been "involved" with Sitzmann and were "[m]ore of Mr. Sitzmann's people" than Jones' people. Trial Tr. (4/30/12) at 11. Sitzmann asserts that the prosecution knew Buss' characterization of the potential buyers as "Sitzmann's people" was false because the Government's own investigation and Jones' grand jury testimony contradicted Buss' testimony.

"A *Napue* violation occurs when the government introduces false or misleading testimony or allows it to go uncorrected, even though the government knew or should have known that the testimony was false." *Straker*, 800 F.3d at 603. "If a defendant makes that showing, a new trial is required [only] if there is 'any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Id.* (quoting *United States v. Gale*, 314 F.3d 1, 4 (D.C. Cir. 2003)).

Sitzmann's argument is not without some merit. On the one hand, some of Jones' statements in the grand jury cast doubt on the conclusion that the anticipated customers were more of "Sitzmann's people." For example, the statement of facts Jones adopted during his testimony states that Jones "assure[d] Colligan that . . . *Jones* had a sufficient client base to sell the cocaine." Agreed Statement of Facts in Support of Guilty Plea at 3 (May 12, 2004), App. 481 (emphasis added). In addition, according to Jones' testimony, at least two of the people to whom Jones stated he was going to sell the cocaine (Alex Mesa and Mike Maloney) were people with whom Jones had been acquainted. *See* Tr. of Grand Jury Proceedings (12/22/05) at 8–12. On the other hand, however, other record

evidence – namely, a recorded conversation between Jones and Colligan – supports Buss' conclusion about the potential buyers. In the recorded conversation, Jones suggested his potential buyers were Sitzmann's "people":

> Jones: [] How much are you going to charge me for this and what do you want me to hold out for you?
> Colligan: Eighteen and I'd like to get five hundred a piece.
> Jones: And hold out, five hundred for you?
> Colligan: Yeah.
> Jones: OK, that's what I told the guy.
> Colligan: Can we do that.
> Jones: I'll make it fifteen hundred. 750 to Greg [Sitzmann] and 750 for me.
> Colligan: OK.
> Jones: So this is for *his people* that I'm doing business with. . . .

Tr. of Recordings (3/11/04) (emphasis added). Moreover, Sitzmann had a history of smuggling cocaine with another one of the potential buyers (Gary Paulson) to whom Jones stated he would supply the cocaine. In addition, the evidence showed that when Sitzmann was arrested he had the names and telephone numbers of several of the potential buyers in his possession. Because the evidence points in both directions, we cannot say that the record conclusively shows that the prosecution knew or should have known that Buss' testimony was false. *See Straker*, 800 F.3d at 603.

In any event, Sitzmann has failed to show that there was a "reasonable likelihood" that the purportedly false testimony could have affected the jury's judgment in this case. *Id.* "Officer Buss's single reference during a five-week trial to Jones's potential customers being more 'Sitzmann's people'

than Jones's was unlikely to have influenced the verdict," Appellee's Br. 52, especially in light of the abundant evidence at trial that Sitzmann participated in the charged conspiracy, *see, e.g.*, *Sitzmann IV*, 74 F. Supp. 3d at 103–06, 108–10, 117–20, 126–27 (describing such evidence). Accordingly, we reject Sitzmann's *Napue* claim.

**E. Reference to the Guilty Plea of a Non-Testifying Co-Conspirator**

Sitzmann next argues that the Government impermissibly used the guilty plea of co-conspirator George Jones as substantive evidence of Sitzmann's guilt at trial. *See* Appellant's Br. 54–56. Sitzmann points to the following exchange between the prosecutor and then-retired officer Buss:

Q: And was there a case in Washington, D.C. against [Jones] for conspiracy?
A: Yes. I had originally obtained an arrest warrant on a criminal complaint.
Q: And did Mr. Jones plead guilty?
A: He pled guilty.
Q: What did he plea?
A: And signed a plea agreement.
Q: Okay. And did he plead guilty to conspiracy to distribute and possess with the intent to distribute at least 5 kilograms of cocaine?
A: That's correct.
Q: And did he end up cooperating with the government?
A: He did.
Q: And what happened to Mr. Jones? Is he alive today?
A: He passed away.

Trial Tr. (4/30/12) at 47–48. Sitzmann's defense counsel neither objected to this line of questioning nor requested (nor received) a jury instruction stating that the guilty plea of a non-testifying co-conspirator may not be used as proof of Sitzmann's guilt. Sitzmann nevertheless argues that the reference to the guilty plea was improper and prejudicial because it revealed to the jury that Jones "had pled guilty to . . . the exact same charge for which Sitzmann was on trial" and that Jones, in his role as a government cooperator, fully "agreed with the Government's evidence." Appellant's Br. 54.

Although Sitzmann later moved, unsuccessfully, for a new trial on the ground that the reference to Jones' guilty plea was improper, he forfeited his claim by not objecting to the testimony at trial. "For purposes of [reviewing] an alleged error in admission of evidence, . . . a post-verdict motion for a new trial is not the same as a timely objection: the delay eliminates any chance that the judge could correct the error without a duplicative trial, and according review as if a timely objection had been raised virtually invites strategic behavior by defense counsel. Thus we review only for plain error." *United States v. Thompson*, 27 F.3d 671, 673 (D.C. Cir. 1994); *see also McGill*, 815 F.3d at 896 n.12; FED. R. CRIM. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

Under the plain error standard, "an appellant must show that the District Court committed (1) a legal error that was (2) 'plain' (a term that is synonymous with 'clear' or 'obvious'), and that (3) affected the appellant's substantial rights." *United States v. Sullivan*, 451 F.3d 884, 892 (D.C. Cir. 2006) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). Under the third component of the plain error test, a defendant "must . . . satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is

'sufficient to undermine confidence in the outcome' of the proceeding." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). "If all three conditions are met, an appellate court may then exercise its discretion to [correct] a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Johnson v. United States*, 520 U.S. 461, 467 (1997); *see generally* EDWARDS & ELLIOTT, FEDERAL STANDARDS OF REVIEW: REVIEW OF DISTRICT COURT DECISIONS AND AGENCY ACTIONS 121–24 (3d ed. 2018).

There can be no doubt that the legal error here was "plain" and "clear." *Sullivan*, 451 F.3d at 892. It is well-settled that the guilty plea or conviction of a member of a conspiracy may not be introduced as substantive evidence of another defendant's guilt. *McGill*, 815 F.3d at 897. *But see id.* at 898 (describing two "limited" exceptions to the rule). This rule safeguards the criminal defendant's right to a fair trial by preventing the jury from "infer[ring] that the defendant on trial is more likely to be guilty" simply because the defendant's co-conspirator was convicted. *United States v. Johnson*, 26 F.3d 669, 677 (7th Cir. 1994). It also curbs the jury's temptation to find the defendant guilty "based upon the disposition of the charges against the co-defendants, rather than upon an individual assessment of the remaining defendant's personal culpability." *United States v. Blevins*, 960 F.2d 1252, 1260 (4th Cir. 1992). The "reasons for preclusion [of such evidence] compound when a *nontestifying* codefendant's guilty plea is introduced because the defendant on trial lacks the ability to cross-examine the codefendant who entered the plea and to probe his motivations. That, in turn, undercuts the defendant's right to have the jury's verdict based only on evidence presented in open court." *McGill*, 815 F.3d at 898. There can be no doubt here that the reference to Jones' guilty plea was a serious error.

On appeal, the Government does not attempt to defend the prosecutor's conduct. And during oral argument, the Government conceded its error. *See* Oral Arg. Recording at 17:22–18:20. However, the Government argues, and we agree, that Sitzmann's claim fails because he has not shown that the reference to Jones' guilty plea "affected [his] substantial rights" by prejudicing the outcome of the trial. *Sullivan*, 451 F.3d at 892; Appellee's Br. 55–58.

In determining whether a plain error is prejudicial, we "typically look[] to the centrality of the issue affected, the severity of the prosecutor's misconduct, the steps taken to mitigate the misconduct, and the closeness of the case." *United States v. Venable*, 269 F.3d 1086, 1091 (D.C. Cir. 2001). We were very troubled by the prosecutor's conduct in this case. However, on the record before us, we cannot find that the reference to Jones' guilty plea was sufficient to demonstrate a reasonable probability that but for the error the outcome would have been different. *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016). The Government presented ample evidence that Sitzmann entered the conspiracy and, along with his co-conspirators, engaged in overt acts in furtherance of the conspiracy. Moreover, because there was "evidence already before the jury that Mr. Jones attempted to obtain cocaine in March 2004 with the intent to distribute it," and because "the [G]overnment did not mention Jones' guilty plea again or attempt to connect his plea . . . with Mr. Sitzmann's guilt," *Sitzmann IV*, 74 F.Supp. 3d at 128, Sitzmann cannot show plain error.

"[I]nformed by the entire record," we cannot say that "the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." *Dominguez Benitez*, 542 U.S. at 83. Therefore, we find that the reference

to Jones' guilty plea, although serious, does not constitute plain error.

## F. Ineffective Assistance of Counsel

Finally, Sitzmann contends that his trial counsel provided ineffective assistance in six different respects. Sitzmann raised none of these claims in the district court. Yet, on appeal, he does not seek an evidentiary remand to further develop the record. To the contrary, he affirmatively argues that "a remand is not necessary," because his particular claims "are based on events in the trial record." Appellant's Reply Br. 24. We agree with Sitzmann that a remand is unnecessary.

"When advancing an ineffective assistance argument on direct appeal, an appellant must present 'factual allegations that, if true, would establish a violation of his Sixth Amendment right to counsel.'" *United States v. Mohammed*, 693 F.3d 192, 202 (D.C. Cir. 2012) (quoting *United States v. Poston*, 902 F.2d 90, 99 n.9 (D.C. Cir. 1990)) (brackets omitted). To establish such a violation, the defendant must show both that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Each of these elements is substantial. Deficient performance requires "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," which means that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88; *see also id.* at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."). Prejudice means "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

28

"[B]ecause ineffective assistance claims typically require factual development," *United States v. Haight*, No. 16-3123, __ F.3d __, slip op. at 10 (D.C. Cir. June 22, 2018), our ordinary practice, when presented with a "colorable" claim, is to "remand for an evidentiary hearing," *Mohammed*, 693 F.3d at 202. However, we do not "reflexively remand." *Id.* (quoting *United States v. Harris*, 491 F.3d 440, 443 (D.C. Cir. 2003)). Two years ago, we reaffirmed what Justice Thomas had explained more than a quarter-century earlier: this Court has "never held that *any* claim of ineffective assistance of counsel, no matter how conclusory or meritless, automatically entitles a party to an evidentiary remand." *United States v. McGill*, 815 F.3d 846, 945 (D.C. Cir. 2016) (quoting *Poston*, 902 F.2d at 99 n.9). To the contrary, we have rejected newly-raised ineffective-assistance claims—without remanding—where the record clearly shows that the challenged attorney actions were not deficient, *see, e.g.*, *United States v. Weaver*, 281 F.3d 228, 234 (D.C. Cir. 2002); *Harris*, 491 F.3d at 445; where the record clearly shows that the defendant was not prejudiced, *see, e.g.*, *United States v. Grey*, No. 14-3003, __ F.3d __, 2018 WL 2749723, at *5 (D.C. Cir. June 8, 2018); *United States v. Udo*, 795 F.3d 24, 30–33 (D.C. Cir. 2015); *United States v. Williams*, 488 F.3d 1004, 1010 (D.C. Cir. 2007); *United States v. Wood*, 879 F.2d 927, 933–34 (D.C. Cir. 1989); and where the ineffective-assistance allegations are "presented in such a vague and conclusory fashion that they do not raise any colorable claim of error or prejudice," *McGill*, 815 F.3d at 945; *see Poston*, 902 F.2d at 98.

Here, we decline to remand because Sitzmann "has not raised any substantial issue that requires a determination of facts." *Poston*, 902 F.2d at 99 n.9. Because each of his claims turns on "events in the trial record," Appellant's Reply Br. 24, there is no need for further factual development. Moreover, each of the claims is either conclusory, insubstantial, or both.

*First*, Sitzmann alleges that his trial counsel failed to object to unspecified hearsay testimony by Officer Buss. Without identifying any specific statements in his opening brief, or explaining why the statements referenced in his reply brief are hearsay, Sitzmann has not made a colorable showing of deficient performance. As for prejudice, Sitzmann contends in his reply brief that Buss' testimony was "the only evidence" that linked Sitzmann to his co-conspirator George Jones. Appellant's Reply Br. 23. But, as the district court explained at length, the Government presented "[o]verwhelming evidence" at trial "that Mr. Jones long served as Mr. Sitzmann's co-conspirator." *Sitzmann IV*, 74 F. Supp. 3d at 126; *see id.* 104–09, 126–27. That evidence included taped conversations between Jones and a government informant indicating that "Jones was working on an ongoing basis with Sitzmann to smuggle drugs" when Sitzmann was arrested in France. *Id.* at 105. It also included drug-smuggling paraphernalia belonging to Sitzmann and recovered from Jones' home after Jones attempted to use some of it to smuggle cocaine. *See id.* at 109, 126. In addition, as we have already indicated, the Government presented evidence that Sitzmann and Jones were both present when cocaine was "shined" and "cut" in Jones' house in the early 2000s. *Supra*, at 4. Given the extensive evidence linking Sitzmann to Jones (and establishing guilt on the conspiracy charge), Sitzmann has raised no colorable claim of prejudice from Officer Buss' testimony. *See, e.g.*, *Grey*, 2018 WL 2749723, at \*5; *Udo*, 795 F.3d at 30.

*Second*, Sitzmann complains that trial counsel failed to object when a federal agent read from a French-to-English translation that he had used to refresh his recollection of admissions made by Sitzmann to federal agents in France in 2008. However, the agent was present at that interview, and he

testified at trial that the document was accurate and refreshed his recollection. Trial Tr. (5/10/2012) at 16–23, 50, *reprinted in* S.A. 1235–42, 1253. The agent would have testified to the substance of Sitzmann's admissions regardless, so counsel's failure to object was certainly not prejudicial—nor even deficient, as counsel acted reasonably to "avoid emphasizing damaging information by objecting to the form of otherwise admissible testimony." *United States v. Bosch*, 914 F.2d 1239, 1247 (9th Cir. 1990).

The entirety of Sitzmann's third ineffective-assistance allegation consists of the following citation-free sentence: "Trial counsel deliberately or with gross negligence opened the door for the government to introduce otherwise inadmissible evidence harmful to his client's defense." Appellant's Br. 60. This is far too conclusory to establish a colorable claim.

*Fourth*, Sitzmann complains that trial counsel stipulated to his two prior drug convictions. However, counsel stipulated only to the fact of the convictions, and did so only after the district court had held—over defense counsel's vigorous objection—that the facts and circumstances surrounding the convictions were admissible to show Sitzmann's knowledge, intent, and ability to engage in a high-volume international drug smuggling operation. *United States v. Sitzmann* (*Sitzmann III*), 856 F. Supp. 2d 55, 58–66 (D.D.C. 2012). After that ruling, it was neither deficient performance nor prejudicial for counsel to build some credibility by not contesting the uncontestable.

*Fifth*, Sitzmann complains that trial counsel failed to object to expert testimony about drug-smuggling methods in Colombia and Canada, where Sitzmann had been operating. This Court, however, routinely has upheld the "well-established practice" of admitting expert testimony about drug

trafficking. *United States v. Mejia*, 448 F.3d 436, 448 (2006). Counsel's failure to raise a meritless evidentiary objection was not deficient performance.

*Sixth*, Sitzmann complains that trial counsel failed to seek evidence of prior convictions of co-conspirators Jerry Harvey, Gary Paulson, and John Sager, all of whom testified against him. But these witnesses admitted at length their own past convictions and drug smuggling on direct examination. *See* Trial Tr. (4/19/2012) at 70–88, *reprinted in* S.A. 841–59; Trial Tr. (4/23/2012) at 4–37, *reprinted in* S.A. 916–49; Trial Tr. (4/24/2012) at 4–9, *reprinted in* S.A. 1006–11. Sitzmann's counsel was not deficient in failing to pursue this further, and his failure to do so was not prejudicial.

Our dissenting colleague notes a seventh, venue-related allegation of ineffective assistance. Dissent at 1. However, that claim was raised only in Sitzmann's reply brief. *Compare* Appellant's Br. 57–62, *with* Appellant's Reply Br. 22–25. Because "[i]t is generally understood that arguments first raised in a reply brief are untimely," *United States v. Hunter*, 786 F.3d 1006, 1011 (D.C. Cir. 2015), we disregard that claim.

Finally, stepping back from the particulars of these individual allegations, we note that the Government's overall case was compelling. Sitzmann himself discussed drug smuggling on recorded phone conversations played to the jury. Gov't Ex. 43, *reproduced in* S.A. 684. Several of Sitzmann's co-conspirators testified against him. *Supra*, at 3. A government agent recounted Sitzmann's extensive admissions—including to several operations that involved smuggling cocaine to or through the United States. Trial Tr. (5/10/2012) at 30, 44–48, *reprinted in* S.A. 1244, 1248–52. Physical and documentary evidence revealed that Sitzmann owned airplanes used to transport drugs, as well as SUVs

outfitted with secret compartments. Gov't Exs. 400a, 400b, 400n, 400x, 400z, 400hh, 400jj, 430, 431, 446, 1007a–1007f, 1008, *reprinted in* S.A. 592–99, 687–702; Trial Tr. (4/24/2012) at 34–40, *reprinted in* 1020–26. Together, this overwhelming evidence of guilt forecloses any colorable inference of prejudice under *Strickland*.

Because Sitzmann has raised no colorable claim of ineffective assistance, we affirm on this point without remanding.

### III.   CONCLUSION

For the foregoing reasons, we affirm Sitzmann's conviction.

*So ordered.*

1

KATSAS, *Circuit Judge*, concurring: The Court rejects Sitzmann's ineffective-assistance claims on the ground that they are not sufficiently colorable, as first raised on appeal, to justify a remand. I join that analysis, but write separately to highlight a second reason why we should reject Sitzmann's claims—because they were not preserved below.

The usual rule, of course, is that parties must raise issues in the district court in order to preserve them for appeal. *See, e.g.*, *United States v. Gewin*, 759 F.3d 72, 78 (D.C. Cir. 2014). We have relaxed that rule for claims alleging ineffective assistance of trial counsel, but only because "trial counsel cannot be expected to argue his own ineffectiveness," *United States v. Weaver*, 281 F.3d 228, 234 (D.C. Cir. 2002), or to develop the factual record necessary to support such a claim. Thus, when new counsel appears *on appeal*, he may raise ineffective assistance of trial counsel for the first time—and secure a remand if the claim is colorable and needs further factual development. *See, e.g.*, *United States v. Haight*, No. 16-3123, __ F.3d __, slip op. at 10 (D.C. Cir. June 22, 2018). However, when new counsel appears *in the district court* and has a fair opportunity to challenge the effectiveness of prior counsel, there is no need—and no justification—for applying any exception to ordinary preservation rules.

*United States v. Debango*, 780 F.2d 81 (D.C. Cir. 1986), proves this point. In *Debango*, defense counsel appointed post-verdict unsuccessfully argued, in a motion for new trial, that trial counsel had been ineffective. *See id.* at 84 n.1. On appeal, the defendant again claimed that trial counsel had been ineffective. On one of the four claims, we held that trial counsel had not rendered deficient performance. *See id.* at 85 n.2. On a second, we affirmed the district court's finding of no prejudice. *See id.* at 85. Then, we held that the factual record was insufficiently developed to support the third and fourth

claims. With regard to the allegedly ineffective failure to locate and interview a potentially helpful witness, we concluded: "Because appellant failed to introduce evidence in the District Court, in the new trial motion, of what [the witness] would have said had trial counsel located him, the record simply fails to support his claim that he was prejudiced by counsel's failure to locate [the witness]." *Id.* at 86. Finally, with regard to the final claim that defense counsel had "slept through much of the trial," we held that "appellant is barred from pursuing the claim in this court because he failed to submit any evidence on the issue in the District Court to support his motion for a new trial." *Id.*

Critically, *Debango* refused to remand to permit additional factual development on the final two claims. We stated the governing rule: "when counsel changes prior to appeal and when there is still a reasonable opportunity to challenge a conviction in the District Court, a criminal defendant bears the usual obligation to raise issues and introduce evidence in the trial court in order to preserve his claims on appeal." *Id.* at 86. We then applied that rule: "We therefore decline to remand the case to allow appellant to substantiate his contentions concerning [the witness] and the sleeping charge." *Id.* at 86 n.6. Finally, we distinguished cases where we had remanded ineffective-assistance claims "because counsel had changed only on appeal," as "[t]he defendants in those cases had no opportunity to present evidence in the District Court on their ineffective assistance claims." *Id.*

The dissent quotes a statement in *United States v. Cyrus*, 890 F.2d 1245, 1247 (D.C. Cir. 1989), that *Debango* "stands only for the proposition" that the defendant, if he chooses to raise any ineffective-assistance claims in a motion for new trial, "must raise all" of those claims together. However, that statement does not control cases where new counsel enters in

time to handle the new-trial motion, for *Cyrus* is not such a case.  *See Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994) ("general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used" (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399 (1821) (Marshall, C.J.))).  To the contrary, the new counsel in *Cyrus* entered the case *only on appeal*.  *See* No. 88-3156 (D.C. Cir. Jan. 6, 1989) (order appointing appellate counsel following notice of appeal).  Moreover, in stressing the need for a remand, *Cyrus* relied centrally on *United States v. DeCoster*, 487 F.2d 1197 (D.C. Cir. 1973), and *United States v. Hinton*, 631 F.2d 769 (D.C. Cir. 1980)—the very precedents that *Debango* had distinguished as ones where "counsel had changed only on appeal."  780 F.2d at 86 n.6.  Indeed, *Cyrus* itself supports the distinction, in explaining that, if possible, "equity and judicial economy require that a criminal defendant build an evidentiary record on his ineffective-assistance claims *before* appealing his conviction on that basis."  890 F.2d at 1247 (emphasis added).

Furthermore, less than five months before *Cyrus* was decided, in an opinion joined by its author, this Court confirmed that *Debango* still was good law and meant what it said:  "The law in this circuit is that a claim of ineffective assistance must be made in a motion for a new trial 'when counsel changes prior to appeal and when there is still a reasonable opportunity to challenge a conviction in the District Court.'"  *United States v. Wood*, 879 F.2d 927, 933 (D.C. Cir. 1989) (quoting *Debango*, 780 F.2d at 86).

Finally, even if *Cyrus* were broadly read to conflict with *Debango*, then *Debango* still would govern as the earlier decision.  *See, e.g.*, *Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) ("when a decision of one panel is inconsistent with the decision of a prior panel, the norm is that the later

decision, being in violation of th[e] fixed law [that panels must follow circuit precedent], cannot prevail").

The post-*Cyrus* "slew of cases" invoked by the dissent, *Post*, at 4, which remand colorable ineffective-assistance claims raised for the first time on appeal, does not change the analysis. Not one of those cases discusses the special circumstances where replacement counsel is secured in time to raise the ineffective-assistance-of-trial-counsel claim in a motion for new trial.[1]

Finally, the dissent quotes at length from *Massaro v. United States*, 538 U.S. 500 (2003), and the concurrence in *United States v. Mohammed*, 693 F.3d 192 (D.C. Cir. 2012), to explain that the courts of appeals "are usually not well-equipped to address ineffective-assistance claims in the first instance." *Post*, at 4. The dissent is correct on that point, which is precisely why trial counsel should be required, when fairly possible, to tee up in a new-trial motion any claims that predecessor counsel had rendered ineffective assistance.

In this case, there was ample opportunity for replacement counsel to do so. Sitzmann's ineffective-assistance claims all challenge decisions made by his trial counsel on or before the May 21, 2012 jury verdict. Sitzmann's current counsel was appointed June 14, 2012. He sought and received seven extensions of time to file post-trial motions. On January 23,

---

[1] The closest any of them comes to this is *United States v. McGill*, 815 F.3d 846, 934 (D.C. Cir. 2016), which observed in passing that one of the defendants, Kenneth Simmons, had received new counsel prior to sentencing. However, that change was made *after* Simmons' motion for a new trial had been resolved. *See United States v. Simmons*, Crim. No. 00-157-12 (D.D.C.), ECF Nos. 2282 (order of May 3, 2006 denying new-trial motion) & 2285 (order of May 8, 2006 appointing new counsel for sentencing and appeal).

2013—more than seven months after his appointment—he filed the new-trial motion. Yet, that motion does not raise any of the ineffective-assistance claims that Sitzmann now seeks to pursue on appeal. Under *Debango*, that is more than enough to constitute a forfeiture.

One final wrinkle involves Sitzmann's own unsuccessful attempts to raise ineffective-assistance claims in the district court in a *pro se* capacity. However, in a ruling not challenged on appeal, the district court held that Sitzmann had forfeited his right to proceed *pro se* through a pattern—spanning many years and many different lawyers—of inconsistent statements and filings made "as a tactic for delay, disruption, and manipulation of the legal system." *United States v. Sitzmann* (*Sitzmann I*), 826 F. Supp. 2d 73, 84 (D.D.C. 2011). As the court summed up:

> Throughout this case, Mr. Sitzmann has demonstrated that his interest is *not* truly in representing himself. He has engaged in a pattern of vacillation, delay, and manipulation, embracing new counsel until the case is ready to go forward, then manufacturing conflicts and besmirching his attorneys' characters in an attempt to replace them and further delay his case. He has filed a series of contradictory and inconsistent motions over the last several months that mirror his practice over the last three years of reversing and vacillating in his requests to proceed with and without counsel.

*Id.* at 93. We should not reward those tactics now, by treating Sitzmann as if he were *pro se*.

Sitzmann's current counsel had ample opportunity to claim in his new-trial motion that trial counsel had been ineffective, yet he failed to do so. Accordingly, I would hold

that the ineffective-assistance claims are unpreserved as well as meritless.

EDWARDS, *Senior Circuit Judge*, dissenting: For the reasons indicated below, I dissent from the court's decision and judgment in Part II.F.

Sitzmann's final contention in this case is that his trial attorney provided ineffective assistance of counsel. He raises several grounds in support of his ineffective-assistance claim, including that his trial attorney allegedly (1) made no "effort to limit . . . hearsay statements made by retired police officer Buss"; (2) failed to object when a government witness, Agent John Armbruster, read from a transcript of a conversation Sitzmann had with federal officials in 2008; (3) "opened the door" for the prosecution to use "inadmissible evidence harmful to" Sitzmann's defense; (4) stipulated to the admission of Sitzmann's prior convictions under Federal Rule of Evidence 404(b); (5) failed to object to certain expert testimony; (6) failed to impeach Sitzmann's co-conspirators with their prior convictions or obtain documents "relating to their service as informants"; and (7) consented to the prosecution's "positions on venue" at trial. Appellant's Br. 58–62; Appellant's Reply Br. 22–25. Sitzmann did not raise these allegations in the trial court proceedings. However, he asks this court to resolve these claims in the first instance because, according to Sitzmann, the trial record conclusively establishes his entitlement to relief. *See* Appellant's Reply Br. 24.

I disagree with the majority's determination that this court should dispose of Sitzmann's ineffective assistance claims in the first instance. As we routinely do in matters of this sort, I believe that we should remand Sitzmann's claims to the District Court for its consideration. The majority's refusal to remand is, in my view, an unfortunate departure from the law of the circuit.

"When advancing an ineffective assistance argument on direct appeal, an appellant must present 'factual allegations that, if true, would establish a violation of his Sixth

Amendment right to counsel.'" *United States v. Mohammed*, 693 F.3d 192, 202 (D.C. Cir. 2012) (citation omitted). The allegations must show that his "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Our precedent makes clear that when a defendant "raises a 'colorable and previously unexplored' ineffective assistance claim on appeal," our typical practice is to remand the claim, "unless the 'record alone conclusively shows that the defendant either is or is not entitled to relief.'" *United States v. Bell*, 708 F.3d 223, 225 (D.C. Cir. 2013) (citations omitted).

The Government argues that "the trial record 'conclusively shows' that counsel was not deficient and that Sitzmann was not prejudiced." Appellee's Br. 67 (quoting *United States v. Rashad*, 331 F.3d 908, 910 (D.C. Cir. 2003)). Citing this court's decision in *United States v. Debango*, 780 F.2d 81 (D.C. Cir. 1986), the Government also maintains that Sitzmann's ineffective-assistance claim should not be remanded because he failed to "allege ineffectiveness" in his motion for new trial. Appellee's Br. 68. I disagree with the Government on both points. I also note that the Government's reliance on *Debango* is misguided and reflects a surprising defiance of the law of this circuit.

In *Debango*, the appellant challenged his conviction for conspiracy to distribute controlled substances on several grounds, including ineffective assistance of counsel. On appeal, the appellant raised four arguments in support of his claim that his trial attorney provided inadequate representation. 780 F.2d at 85. However, in his motion for new trial – which he filed with the assistance of new, post-trial counsel – the appellant had raised only three of his four arguments. *Id.* at 84 n.1, 85–86. The court considered the merits of the three preserved claims, but "decline[d] to remand the case to allow

[the] appellant to substantiate his contentions concerning . . . the [fourth allegation]." *Id.* at 86 n.6. The court noted that "when counsel changes prior to appeal and when there is still a reasonable opportunity to challenge a conviction in the District Court, a criminal defendant bears the usual obligation to raise issues and introduce evidence in the trial court in order to preserve his claims on appeal." *Id.* at 86.

Three years after *Debango* was decided, the court "clarif[ied] this circuit's law on the handling of [S]ixth [A]mendment claims raised without a record." *United States v. Cyrus*, 890 F.2d 1245, 1247 (D.C. Cir. 1989). We explained that:

> [W]here a party has not sought a new trial or collaterally attacked his conviction on the grounds of ineffective representation, this court must remand. *The only exception to that rule is where a defendant has already raised other ineffective counsel claims in an evidentiary hearing. United States v. Debango*, 780 F.2d 81 (1986). In those cases we have decided an ineffective representation claim without remanding for hearings on a new trial motion. *Debango*, then, stands only for the proposition that the defendant must raise all ineffective counsel claims in the proceeding for new trial.
>
> Our precedent should be clear. Where a party fails to create a record on the issue of the ineffectiveness of counsel, this court must remand the case for such proceedings.

*Id.* (emphasis added); *see also United States v. Fennell*, 53 F.3d 1296, 1304 (D.C. Cir. 1995), *rev'd on other grounds on reh'g*, 77 F.3d 510 (D.C. Cir. 1996) (confirming that "[w]hen an

appellant has not raised a claim of ineffective assistance of counsel before the district court, either in a motion for a new trial, pursuant to Federal Rule of Criminal Procedure 33, or in a collateral attack, under 28 U.S.C. § 2255, our general practice is to remand the claim for an evidentiary hearing").

In a slew of cases in the nearly twenty years following *Cyrus* and *Fennell*, this court has consistently followed a practice of remanding "colorable" ineffective-assistance claims to the District Court for resolution in the first instance, unless the "'trial record alone conclusively shows' that the defendant either is or is not entitled to relief." *Rashad*, 331 F.3d at 910 (citation omitted); *see also United States v. James*, 719 F. App'x 17 (D.C. Cir. 2018); *United States v. Eshetu*, 863 F.3d 946, 957–58 (D.C. Cir. 2017); *McGill*, 815 F.3d at 942; *Mohammed*, 693 F.3d at 202; *United States v. Laureys*, 653 F.3d 27, 34 (D.C. Cir. 2011) (per curiam). And we have followed this approach even when the defendant failed to raise ineffective-assistance claims in a motion for new trial. *See, e.g.*, *Mohammed*, 693 F.3d 192. As the court made clear in *Fennell*, "[w]hen an appellant has not raised a claim of ineffective assistance of counsel before the district court, either in a motion for a new trial . . . or in a collateral attack, . . . our general practice is to remand the claim for an evidentiary hearing." 53 F.3d at 1304.

The law of the circuit reflects an understanding on the part of the members of the court that we are usually not well-equipped to address ineffective-assistance claims in the first instance given their "fact-intensive nature." *Rashad*, 331 F.3d at 909. As the Supreme Court has explained:

When an ineffective-assistance claim is brought on direct appeal, . . . the court must proceed on a trial record not developed precisely for the object of

litigating or preserving the claim and thus often incomplete or inadequate for this purpose. . . . The evidence introduced at trial . . . will be devoted to issues of guilt or innocence, and the resulting record in many cases will not disclose the facts necessary to decide either prong of the *Strickland* analysis. If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it. . . . Without additional factual development, moreover, an appellate court may not be able to ascertain whether the alleged error was prejudicial.

Under the rule we adopt today, ineffective-assistance claims ordinarily will be litigated in the first instance in the district court, the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial. The court may take testimony from witnesses for the defendant and the prosecution and from the counsel alleged to have rendered the deficient performance.

*Massaro v. United States*, 538 U.S. 500, 504–05 (2003). In other words:

We have acknowledged that the court of appeals can resolve an ineffective-assistance issue in the first instance when the record "conclusively" shows that the defendant either is or is not entitled to relief. But given the fact-bound nature of ineffective-assistance claims, that exception arises only rarely. If there is any doubt or difficulty, if it is not obvious from the face of the record whether relief is warranted, the appropriate course is simply to remand.

*Mohammed*, 693 F.3d at 206 (Kavanaugh, J., concurring in part and concurring in the judgment).

Turning to the facts of this case, the record suggests that Sitzmann attempted to raise a claim of ineffective assistance in the post-trial proceedings. In a *pro se* letter to the court filed on June 12, 2014, Sitzmann explained that he had filed a *pro se* motion in November 2012 alleging ineffective assistance of counsel and had repeatedly asked his attorney for an update on the status of that motion, but that – against Sitzmann's wishes – his attorney had withdrawn the motion. *See* Letter to Court Requesting Hearing Date, *United States v. Sitzmann*, No. 1:08-cr-242 (D.D.C. June 12, 2014) (Dkt. No. 246). Sitzmann requested that the court reconsider his motion and schedule a hearing on his claims. *Id.* No such hearing was held.

On appeal, Sitzmann raises seven separate bases for his ineffective assistance claim. If true, the factual allegations underlying his claims may "establish a violation of his Sixth Amendment right to counsel." *Mohammed*, 693 F.3d at 202 (citation omitted). However, because the record does not conclusively show whether Sitzmann is or is not entitled to relief, I would follow our "typical practice" of remanding his ineffective-assistance claims to the District Court for consideration in the first instance. *United States v. Knight*, 824 F.3d 1105, 1112 (D.C. Cir. 2016). Accordingly, I dissent from Part II.F.