**UNITED STATES of America,
Appellee,**

**v.**

**Gregory WILLIAMS, Appellant.**

**No. 00–3003.**

United States Court of Appeals,
District of Columbia Circuit.

Submitted Oct. 17, 2000.

Decided Dec. 8, 2000.

Billy L. Ponds was on the brief for appellant.

Wilma A. Lewis, U.S. Attorney, John R. Fisher, Adam L. Rosman and Kenneth W. Cowgill, Assistant U.S. Attorneys, were on the brief for appellee.

Before: WILLIAMS, RANDOLPH, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

The issue is whether the perjury of a prosecution expert witness, discovered after trial, entitled Gregory L. Williams to a new trial. The jury convicted Williams of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1). When arrested, Williams had 10.5 grams of heroin in 87 small plastic "baggies" in his coat pocket, and was storing another 75.3 grams of heroin, packaged in 638 small plastic "baggies," in an automobile. One government expert, a forensic chemist, testified about the tests he performed to establish that the material in the "baggies" was heroin.

Another government witness, Detective Johnny St. Valentine–Brown, answered a question about his qualifications, stating that he had been a narcotics expert for more than twenty years and had served as a senior narcotics policy analyst in the Reagan and Bush administrations. At the end of his lengthy response, he added: "I am also a Board-certified pharmacist. I receive, maintain compound and dispense narcotic, as well as non-narcotic substances per prescription." Without objection, the court accepted Brown as an expert in the "distribution and use of narcotics, the packaging of narcotics for street-level distribution, the manner in which narcotic dealers distribute narcotic substances in the District of Columbia, the price for which narcotics are sold, both the wholesale and the street value ... [and] ... the Metropolitan Police Department and Drug Enforcement Administration procedures for the safeguarding of narcotics evidence." Brown went on to testify about the procedures the Police Department used to store narcotic substances and to give his opinion, in light of Williams' large collection of small "baggies" of heroin, that "[h]eroin users don't buy this amount of dope broken down and packaged like this for their own personal use. It just does not happen."

After Williams' conviction, his. attorney learned that Brown was not a pharmacist and had no degree in pharmacology, facts unknown to the prosecution during the trial. Williams then moved for a new trial pursuant to Federal Rule of Criminal Procedure 33, which the district court denied.

What is the standard for ordering a new trial when the newly discovered evidence is that perjury occurred? Rule 33 says only: "the court may grant a new trial ... if the interests of justice so require." An ancient opinion from another circuit lays down this test: a defendant is entitled to a new trial if, without the perjured testimony, "the jury might have reached a different conclusion." *Larrison v. United States,* 24 F.2d 82, 87 (7th Cir.1928). Notice that the *Larrison* formulation focuses on the importance of the perjured testimony to the prosecution's case. It does not ask whether the jury would have reached a different conclusion had the perjury been revealed at trial, although the Seventh Circuit has now modified the test to take this into account. *See United States v. Mazzanti,* 925 F.2d 1026, 1030 & n. 6 (7th Cir.1991). Notice too that *Larrison* puts the test in terms of what "might" have happened rather than what likely would have occurred.

■ Under our usual Rule 33 standard, a defendant is not entitled to a retrial on the basis of newly discovered evidence unless he can show that "a new trial would *probably* produce an acquittal." *Thompson v. United States,* 188 F.2d 652, 653 (D.C.Cir.1951) (emphasis added). This formulation, common throughout the federal courts, has been used for nearly a century and a half. *See* 3 CHARLES ALAN

WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 557 (2d ed.1982). We have consistently followed the *Thompson* standard in evaluating motions for a new trial under Rule 33. *See United States v. Gloster,* 185 F.3d 910, 914 (D.C.Cir.1999). The difference between *Larrison* and *Thompson* is not just in the use of "might" versus "probably." *Thompson* looks ahead and evaluates the outcome of a new trial; *Larrison* looks back and evaluates the impact of the perjury on the jury in the original trial.

This circuit has never adopted *Larrison.* In the past we have managed to avoid choosing between it and the standard of *Thompson* because the defendant was not entitled to a new trial under either formulation. *See United States v. Mangieri,* 694 F.2d 1270, 1286 (D.C.Cir.1982); *United States v. Mackin,* 561 F.2d 958, 961 (D.C.Cir.1977). Today we join several other circuits in rejecting *Larrison. See United States v. Sinclair,* 109 F.3d 1527, 1532 (10th Cir.1997); *United States v. Provost,* 969 F.2d 617, 622 (8th Cir.1992); *United States v. Krasny,* 607 F.2d 840, 844–45 (9th Cir.1979); *United States v. Stofsky,* 527 F.2d 237, 246 (2d Cir.1975). The First Circuit in *United States v. Huddleston,* 194 F.3d 214, 219 (1st Cir.1999), also refused to follow *Larrison* partly on the basis of *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The Supreme Court there directed federal courts to overturn convictions based on the government's knowing use of perjured testimony if there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* From this the First Circuit reasoned: "If courts must scrutinize the knowing use of perjured testimony under this standard, there is no principled justification for treating the government more harshly (such as by interposition of the *Larrison* rule) when its use of perjured testimony is inadvertent." *Huddleston,* 194 F.3d at 220. We are not so sure. The *Agurs* test, which repeats prior Supreme Court law, *see Giglio v. United States,* 405 U.S. 150, 154–55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois,* 360 U.S. 264, 269–70, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), is quite easily satisfied. The phrases—"reasonable likelihood," "could have affected"—"mandate a virtual automatic reversal of a criminal conviction." *Stofsky,* 527 F.2d at 243. It is hard to see how *Larrison* could have set down an even more liberal test than *Agurs,* which appears to be what the First Circuit supposed.

This is not to say that the *Larrison* test is difficult to satisfy. It is not. The Second Circuit's *Stofsky* opinion put the matter well: "the test, if literally applied, should require reversal in cases of perjury with respect to even minor matters, especially in light of the standard jury instruction that upon finding that a witness had deliberately proffered false testimony in part, the jury may disregard his entire testimony." 527 F.2d at 245–46. That is reason enough to reject *Larrison.*

If not *Larrison,* what should the standard be? One possibility is the standard laid down in *Thompson* for other types of newly discovered evidence. This would mean that, when perjury by a prosecution witness is discovered after trial and when the prosecution did not know of the perjury until then, a defendant would be entitled to a new trial only if he can establish that he would probably be acquitted on retrial. History provides a reason for adhering to the *Thompson* formulation. Rule 33's current text was adopted in 1944. The accompanying Advisory Committee note stated that the rule "substantially continues existing practice." FED. R.CRIM.P. 33, advisory committee's note. The widely-accepted practice in 1944, a practice derived from a mid–19th century state court decision, *see* 3 WRIGHT, *supra,* § 557, at 315, 322, required a defendant seeking a new trial to demonstrate a likelihood of success in a future retrial. *See Evans v. United States,* 122 F.2d 461, 468–69 (10th Cir.1941); *Wagner v. United States,* 118 F.2d 801, 802 (9th Cir.1941);

*Prisament v. United States,* 96 F.2d 865, 866 (5th Cir.1938); *Johnson v. United States,* 32 F.2d 127, 130 (8th Cir.1929). *Larrison* too predated Rule 33, but it had not been adopted in any other circuit, and in fact had been cited only twice in the other courts of appeals, and then only for propositions having nothing to do with this case. *See Dale v. United States,* 66 F.2d 666, 667 (7th Cir.1933); *Vause v. United States,* 54 F.2d 517 (2d Cir.1931).

Another reason for adhering to the *Thompson* standard is that newly discovered evidence of perjury is not distinguishable from other newly discovered evidence. One author disagrees, arguing that perjury is different because it creates "an error at trial" whereas in the case of other types of newly discovered evidence, "the evidence at trial may have been incomplete, but it was all true." Note, *I Cannot Tell A Lie: The Standard for New Trial in False Testimony Cases,* 83 MICH. L. REV. 1925, 1945 (1985). The difference is illusory. Newly discovered evidence may often tend to prove that the evidence before the jury was not "true." A third party may confess to the crime; it may turn out that the main government witness has a string of felony convictions; proof positive of the defendant's alibi might surface. Any one of these items of newly discovered evidence, in various degrees, throws doubt on the accuracy of the trial evidence pointing to the defendant's guilt. Yet the district court, faced with Rule 33 motions in such cases, will evaluate the motions by using the *Thompson* test.

 We recognize that the Second Circuit in *Stofsky,* while refusing to follow *Larrison,* may have devised a variation of it. Rather than asking whether the outcome of the trial might have been different had the jury known of the witness's lie, the Second Circuit asks whether the defendant probably would have been acquitted. This differs from our *Thompson* standard because, like *Larrison,* it looks at the matter retrospectively. The retrospective-prospective difference may not matter in the mine run of cases. But we can imagine situations in which it would matter, situations in which *Stofsky* would command a new trial that in all probability would not produce a difference outcome. Because we can see no good reason to treat newly discovered evidence of perjury differently than other types of newly discovered evidence, we reject *Stofsky* and adhere to our original formulation under *Thompson.*

 If Williams were retried, the government would have at its disposal any number of experts who could testify that the amount of heroin in his possession was inconsistent with personal use. Or the government could decide not to call an expert on this subject. Any rational juror could infer from the fact that Williams was carrying 725 individual "baggies" of heroin that he was intending to sell them. *See United States v. Askew,* 88 F.3d 1065, 1070 (D.C.Cir.1996) (jury could infer from the quantity of drugs possessed that a defendant intended to distribute them even without expert witness). So too the fact that drugs were segregated into "baggies" supports an inference of intent to distribute. *See United States v. Glenn,* 64 F.3d 706, 711–12 (D.C.Cir.1995) (drugs segregated into 9 "baggies" supports inference of intent to distribute). In either event—a different expert or no expert—it is most unlikely that a jury would acquit Williams in a new trial.

*Affirmed.*