# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued November 5, 2018                    Decided March 1, 2019

No. 17-3077

UNITED STATES OF AMERICA,
APPELLEE

v.

JOHN MILTON AUSBY,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:72-cr-00067-1)

---

*Adam G. Thompson* argued the cause for the appellant. *Jenna M. Cobb* and *Jonathan W. Anderson* were with him on brief.

*Jessie K. Liu*, United States Attorney, argued the cause for the appellee. *Elizabeth Trosman*, *John P. Mannarino* and *Pamela S. Satterfield*, Assistant United States Attorneys, were with her on brief.

Before: HENDERSON, SRINIVASAN and MILLETT, *Circuit Judges*.

PER CURIAM: In 1972, the government charged John Milton Ausby with the murder and rape of Deborah Noel. The

prosecution introduced several pieces of evidence at trial connecting Ausby to the crime, including the testimony of a forensic expert who claimed that hairs found at the crime scene were microscopically identical to Ausby's hair. The jury subsequently convicted Ausby of the rape and murder and Ausby received a life sentence.

The government now concedes that the testimony of the forensic expert was false and misleading and that the government knew or should have known so at the time of Ausby's trial. Ausby moved to vacate his conviction under 28 U.S.C. § 2255 and the holding in *Napue v. Illinois*, 360 U.S. 264 (1959). The district court denied Ausby's motion because it determined that the forensic expert's testimony was not material to the jury's guilty verdict. *United States v. Ausby*, 275 F. Supp. 3d 7, 32 (D.D.C. 2017). We, however, conclude that Ausby has demonstrated a "reasonable likelihood" that the forensic expert's admittedly false testimony "could . . . have affected the judgment of the jury." *Napue*, 360 U.S. at 271. We therefore reverse.

## I. BACKGROUND

Deborah Noel returned to her apartment on December 14 for the first time in two weeks. Shortly after her arrival, she was raped and murdered in her bedroom. A grand jury indicted Ausby on six counts related to Noel's death: felony murder, premeditated murder, rape while armed, rape, burglary while armed and burglary.

At trial, the prosecution introduced substantial evidence connecting Ausby to Noel's rape and murder. First, the prosecution called to testify two individuals who encountered a black male in garb resembling Ausby's in Noel's apartment building in the days leading up to her murder. One of the two identified Ausby himself from a photo array and in the

courtroom during trial. Second, the prosecution presented evidence that Ausby had left a thumbprint inside Noel's apartment sometime within ten days of the murder. Third, the prosecution presented evidence that vials of scented oil left inside Noel's apartment and beneath her windows belonged to Ausby. Fourth, the prosecution presented evidence that the bullet that killed Noel potentially, but not definitively, matched the handgun Ausby was carrying when he was arrested.

At issue here, the government also elicited testimony from FBI Special Agent Robert Neill, a microscopic hair analysis specialist, regarding hair found at the scene of the crime. According to Agent Neill's testimony, microscopic analysis of hair involved categorizing hair on the basis of between fifteen and twenty-five characteristics "which tend to be more or less unique to a particular individual." To compare two hairs, Agent Neill placed them side-by-side under a special microscope and then compared them using the hairs' observable characteristics.

Agent Neill testified that hairs taken from inside Noel's apartment and on her body were "microscopically identical" to Ausby's hairs. Although Agent Neill acknowledged that "microscopic hair comparisons do not constitute a basis of positive personal identification," he opined that "the questioned hairs . . . either originated from the head of Mr. Ausby or from some other person . . . whose head hairs or pubic hairs are microscopically identical."

During its closing statement, the prosecution reviewed the testimony from those who encountered Ausby in the apartment building and the evidence connecting him to the oils found in Noel's bedroom and under her windows. The prosecutor then asked the jury: "Now, could I not have rested my case right there? Could you not have said, Why are you boring me with

anything further in this case? Is that not enough to convict this defendant?" But continuing on, the prosecutor revisited Agent Neill's hair-comparison testimony as well as the evidence regarding Ausby's thumbprint and the potential match between Ausby's handgun and the bullet that killed Noel.

In his closing, defense counsel admitted that Ausby had entered Noel's apartment but argued that he did so during Noel's two-week absence, not on the day of her rape and murder. He challenged the reliability of Agent Neill's purported identification of Ausby's hairs on Noel's body, particularly given that Agent Neill had conceded that microscopic hair comparison analysis cannot produce a positive identification. In response, the prosecutor asserted during his rebuttal that microscopic hair comparison analysis "is not a positive means of identification but it amounts to a positive means here."

The jury convicted Ausby of felony murder and rape while armed. The court then sentenced Ausby to life imprisonment for Noel's murder and ten to thirty years' imprisonment for her rape. This Court affirmed Ausby's conviction and sentence. *United States v. Ausby*, 489 F.2d 1273 (Table) (D.C. Cir. 1974) (per curiam). Ausby has fully served his rape sentence, leaving his life sentence for murder.

In 2012, the FBI and the Department of Justice began reviewing cases in which the government had introduced testimony regarding microscopic hair comparison analysis to assess whether the government's forensic expert gave false or misleading testimony that exceeded the limits of science. After reviewing Ausby's case, the FBI determined that Agent Neill misled the jury by implying that he could positively identify the hairs taken from the crime scene as belonging to

Ausby. In light of Agent Neill's admittedly misleading testimony, the United States conceded error and waived any statute of limitations and procedural-default defenses in the event Ausby sought relief under 28 U.S.C. § 2255. The government, however, took "no position regarding the materiality of the error" at that time.

Following the government's concession, Ausby moved to vacate his conviction under 28 U.S.C. § 2255(a) "due to the government's knowing presentation of false and misleading expert hair examination testimony, in violation of the Due Process Clause of the Fifth Amendment and *Napue v. Illinois*." The district court denied Ausby's § 2255 motion. *Ausby*, 275 F. Supp. 3d at 32. The court determined that Agent Neill's testimony was not material to Ausby's conviction "because given the overwhelming evidence against him, even absent the false hair matching testimony, there is no 'reasonable likelihood' that the hair evidence 'could have altered the outcome of the case.'" *Id.* (quoting *United States v. Vega*, 826 F.3d 514, 531 (D.C. Cir. 2016) (per curiam)). The district court, however, granted Ausby a certificate of appealability and Ausby timely noticed an appeal.

## II. ANALYSIS

A federal prisoner may move to have his sentence vacated under 28 U.S.C. § 2255 if "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Under *Napue v. Illinois* and its progeny, "the prosecution's introduction of false testimony" deprives a defendant of a fair trial as required by the Fifth and Sixth Amendments. *United States v. Straker*, 800 F.3d 570, 602 (D.C. Cir. 2015) (per curiam). The government commits a *Napue* violation "when the government introduces false or misleading testimony or allows it to go uncorrected, even

though the government knew or should have known that the testimony was false." *Id.* at 603 (citations omitted). If the government introduces false or misleading testimony, however, "the grant of a new trial is not automatic," *Vega*, 826 F.3d at 529; the false evidence must also be material to justify a new trial, *Giglio v. United States*, 405 U.S. 150, 154 (1972). We review a *Napue* claim *de novo*. *United States v. Sitzmann*, 893 F.3d 811, 821 (D.C. Cir. 2018) (per curiam).

The government has conceded that Agent Neill's testimony regarding microscopic hair comparison analysis was false and that the government knew or should have known it was false at the time of Ausby's trial. The parties dispute only whether Agent Neill's false statements were material to Ausby's conviction.

As first formulated in *Napue* and repeated in the decades of cases that have since applied its holding, the government's introduction of false testimony is material if the evidence "could . . . in any reasonable likelihood have affected the judgment of the jury." *Giglio*, 405 U.S. at 154 (alteration in original) (quoting *Napue*, 360 U.S. at 271); *see also Sitzmann*, 893 F.3d at 828; *Straker*, 800 F.3d at 603. The "reasonable likelihood" standard does not require the defendant to show "that he 'more likely than not' would have been acquitted" absent the false statements. *Wearry v. Cain*, 136 S. Ct. 1002, 1006 (2016) (per curiam) (quoting *Smith v. Cain*, 565 U.S. 73, 75 (2012)).[1] Rather, the defendant need show only that the

---

[1] Although *Wearry* explains the contours of *Napue*'s "reasonable likelihood" standard, *Wearry* in fact addressed a claim under *Brady v. Maryland*, 373 U.S. 83 (1963) (the prosecution withheld material evidence favorable to the defense). *Wearry*, 136 S. Ct. at 1002. A *Brady* claim invokes a materiality standard different from *Napue*'s "reasonable likelihood" standard. *See Smith v. Cain*, 565 U.S. 73, 75 (2012) (observing that the withheld evidence

false testimony "'undermine[s] confidence' in the verdict." *Id.* (quoting *Smith*, 565 U.S. at 76). Thus, even if the false testimony "*may* not have affected the jury's verdict," it is material if the evidence reasonably *could* have affected the verdict. *Id.* at 1006 n.6 (emphasis added). As the Supreme Court's explication makes clear, the "reasonable likelihood" standard is outcome-driven—that is, the relevant question is whether the false testimony "could have altered the outcome of the case." *Vega*, 826 F.3d at 531. This standard "is quite easily satisfied." *United States v. Williams*, 233 F.3d 592, 594 (D.C. Cir. 2000).[2] This Court's *Napue* decisions have also held that the burden of proving materiality lies with the defendant. *See Sitzmann*, 893 F.3d at 829; *Straker*, 800 F.3d at 605; *United States v. Burch*, 156 F.3d 1315, 1328–29 (D.C. Cir. 1998). Ultimately, then, the *Napue* materiality standard requires Ausby to establish that Agent Neill's false testimony reasonably could have altered the outcome of his case, thereby undermining confidence in the jury's guilty verdict.

Despite the consistency with which *Napue* decisions have articulated the materiality standard, Ausby asks us to strike out "reasonable likelihood" and insert the phrase "reasonable possibility." While Ausby posits that the two phrases are substantively "synonymous," he also maintains that the semantic difference "is meaningful" for clarifying the materiality standard. Even taking Ausby's position as internally consistent, we reject it. The only support Ausby offers in favor of his new semantic gloss are the opinions of

is material under *Brady* if "there is a *reasonable probability* that, had the evidence been disclosed, the result of the proceeding would have been different" (emphasis added) (quoting *Cone v. Bell*, 556 U.S. 449, 469–70 (2009))).

[2] *Williams* involved a challenge under Federal Rule of Criminal Procedure 33, not a *Napue* challenge. *Williams*, 233 F.3d at 593–94.

two Supreme Court Justices, both of which failed to garner majority support. *See United States v. Bagley*, 473 U.S. 667, 679–80, 679 n.9 (1985) (opinion of Blackmun, J.) (joined in relevant part by Justice O'Connor); *Strickler v. Greene*, 527 U.S. 263, 299 (1999) (Souter, J., concurring in part and dissenting in part) (writing for himself in relevant part). These two non-precedential opinions fail to outweigh the nigh sixty years of Supreme Court precedent consistently employing the phrase "reasonable likelihood." We therefore decline Ausby's invitation to reformulate the *Napue* materiality standard.

In addition to quibbling over wording, Ausby argues that the "reasonable likelihood" standard is substantively equivalent to the harmless-error standard of *Chapman v. California*, 386 U.S. 18 (1967). Under what he christens the "*Napue*/*Chapman* standard," Ausby argues that he is entitled to a new trial unless the government can prove that Agent Neill's false testimony was harmless beyond a reasonable doubt. For support, Ausby first relies on the opinions of Justice Blackmun in *United States v. Bagley* and Justice Souter in *Strickler v. Greene*. But just as we decline to rely on these non-precedential opinions as definitive articulations of the "reasonable likelihood" standard, we also decline to rely on them as reliable explanations of the standard's substantive meaning.

Next, Ausby relies on this Court's decision in *United States v. Vega*. *Vega* stated in *dicta* that the *Napue* materiality standard is equivalent to the harmless-error standard of *Chapman v. California*. *Vega*, 826 F.3d at 529 n.4. In its holding, however, *Vega* applied and rested its decision exclusively on the "reasonable likelihood" standard laid out in *Napue* without reference to *Chapman*. *See id.* at 531. That is this Circuit's standard and the one we apply here as well. To

the extent Ausby tries to wring out of *Vega*'s footnote a rule imposing the burden of proving immateriality on the government or otherwise changing the "reasonable likelihood" standard, he is flatly incorrect.  Consistent with longstanding precedent, *Vega* left on the defendant the burden of establishing that the false testimony "could in any reasonable likelihood have affected the judgment of the jury."  *Vega*, 826 F.3d at 529 (quoting *Burch*, 156 F.3d at 1329); *see id.* at 530–31; *Straker*, 800 F.3d at 605; *Burch*, 156 F.3d at 1328–29.

The Supreme Court's and this Court's *Napue* decisions fall at one end of the materiality spectrum or the other.  In some cases, the false testimony concealed facts that would have undermined the credibility of the government's key witness. *See Giglio*, 405 U.S. at 151, 154–55 ("key" cooperating witness falsely testified that he received no promise that he would not be prosecuted if he testified); *Napue*, 360 U.S. at 265, 269–71 ("principal" cooperating witness falsely testified that he was not promised a reduced sentence if he testified); *Alcorta v. Texas*, 355 U.S. 28, 29, 31–32 (1957) (prosecution's only eyewitness falsely testified that he was not having an affair with the accused's wife at the time of the crime); *United States v. Iverson*, 637 F.2d 799, 801–05 (D.C. Cir. 1980) ("key" cooperating witness falsely testified that she had already been sentenced, intimating that she had nothing to gain by testifying).  Because this evidence plainly could have affected the jury's verdict, the false statements were material.  In other cases, the false statements involved facts that were either redundant or clearly irrelevant to the jury's decision.  *See Sitzmann*, 893 F.3d at 829 (single purportedly false statement in a five week trial was not material given "abundant evidence" demonstrating defendant's participation in the charged conspiracy); *Vega*, 826 F.3d at 531 (witness's false testimony regarding photo-array identification was not material because several other witnesses identified the defendant); *Straker*, 800

F.3d at 604–08 (false testimony either played almost no role in the trial or was significantly outweighed by the defendants' confessions); *Burch*, 156 F.3d at 1328–29 ("allegedly" false statements were not material because they could not have affected the credibility of the government's evidence and witnesses); *United States v. Anderson*, 509 F.2d 312, 327 & n.110 (D.C. Cir. 1974) (one allegedly false statement regarding a witness's identification did not bear "such significance to [the defendant's] bribery trial as a whole that it 'could . . . in any reasonable likelihood have affected'" the jury's judgment (alteration in original) (quoting *Giglio*, 405 U.S. at 154)). The false statements in these cases, therefore, were obviously not material to the jury's verdict.

We believe Agent Neill's false hair-comparison testimony during Ausby's trial falls somewhere between the two ends. Agent Neill's testimony was neither the sole piece of evidence on which the prosecution hung its case nor redundant or irrelevant. We ultimately conclude, however, that Agent Neill's testimony falls on the material side of the spectrum. Agent Neill's testimony was the primary evidence that directly contradicted Ausby's defense theory—that Ausby had been in Noel's apartment during her two-week absence but not on the day of her rape and murder. Ausby's defense theory plausibly explained the remaining evidence. First, the sightings of Ausby near Noel's apartment occurred four or five days before the murder and thus were consistent with Ausby's presence in Noel's apartment on an earlier date. Second, Ausby could have left the thumbprint and vials of oil in Noel's apartment while in her apartment sometime before the date of her rape and murder. And third, the ballistic evidence could not yield a positive identification. That Agent Neill's testimony played a key role in debunking Ausby's defense is borne out by the prosecution's emphasis in its closing rebuttal that Agent Neill's microscopic hair-comparison analysis "is not a positive means

of identification but it amounts to a positive means here." Thus, without Agent Neill's hair-comparison testimony, there is a reasonable likelihood that the jury could have accepted Ausby's defense theory. Ausby has therefore carried his burden of demonstrating that Agent Neill's testimony "could . . . in any reasonable likelihood have affected the judgment of the jury." *Giglio*, 405 U.S. at 154 (alteration in original) (quoting *Napue*, 360 U.S. at 271). Because the government has conceded that Agent Neill's testimony was false and that the government knew or should have known so at the time of Ausby's trial, Ausby has presented a valid claim under *Napue* that he was convicted in violation of the Fifth and Sixth Amendments. Accordingly, the district court should have granted Ausby's § 2255 motion to vacate his conviction.

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded for proceedings consistent with this opinion.

*So ordered.*